DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Debbie Whaley, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation and to enter an order granting said compensation. In the alternative, Relator, relator requests a writ of mandamus that orders the commission to vacate its order denying PTD compensation and to conduct further proceedings in this cause.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate recommended that this court deny the requested writ of mandamus. Relator has filed objections to the magistrate's decision, and the matter is now before this court for a full independent review.
 {¶ 3} In her objections to the magistrate's decision, relator appears to argue that evidence in the record supports a finding that she is not capable of engaging in sustained remunerative activity and therefore an award of PTD was required, and that the commission ignored this evidence in its analysis of whether to grant PTD compensation. This argument is similar to, if not the same as, what was argued before the magistrate. Upon our independent review of the record, as well as our examination of the magistrate's decision, we agree with the magistrate's analysis on this issue and his conclusion that the commission was not required to analyze, in its decision, evidence that it did not rely upon or was otherwise found to be insignificant. As stated by the magistrate, "it is well-settled law that the commission is not required to explain why certain evidence was not relied upon." (Appendix A, at ¶ 33, citing State ex rel.Lovell v. Indus. Comm. [1996], 74 Ohio St.3d 250.) We also agree with the magistrate's conclusion that the decision of the commission was clearly supported by some evidence in the record.
 {¶ 4} Therefore, relator's objections to the contrary, we find that the magistrate has properly discerned the pertinent facts and applied the relevant law to those facts. The commission's decision to deny relator's PTD application was supported by some evidence and was not an abuse of discretion. Relator's objections to the magistrate's decision are without merit and are accordingly overruled.
 {¶ 5} Pursuant to Civ.R. 53(E)(4)(b), we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we hereby deny the requested writ of mandamus.
Objections overruled; writ denied.
Bryant and Klatt, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Debbie Whaley, : Relator : : No. 03AP-725 Industrial Commission of Ohio: (REGULAR CALENDAR) and P I Enterprises, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on February 25, 2004 Becker Cade, and Dennis A. Becker, for relator.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} In this original action, relator, Debbie Whaley, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation and to enter an order granting said compensation.
 {¶ 7} Findings of Fact:
 {¶ 8} 1. On July 29, 1998, relator sustained an industrial injury while employed with respondent P I Enterprises, Inc. ("employer") as a deli-bakery manager at its Springdale IGA store. The industrial claim is allowed for: "bilateral sprain/strain of lumbosacral region. L4-L5, L5-S1 herniated disc. Psychogenic pain; pre-existing lumbar degenerative disc disease and lumbar facet hypertrophy," and is assigned claim number 98-478272.
 {¶ 9} 2. On June 5, 2002, relator filed an application for PTD compensation.
 {¶ 10} 3. On August 30, 2002, relator was examined, at the commission's request, by Ron N. Koppenhoefer, M.D. Dr. Koppenhoefer examined only for the allowed physical conditions of the claim. Dr. Koppenhoefer wrote:
Based on examination, it is [my] medical opinion that Ms. Whaley has reached maximal medical improvement for the allowed conditions of bilateral sprain/strain of lumbosacral region, L4-L5, L5-S1 herniated disc as well as preexisting lumbar degenerative disc disease and lumbar facet hypertrophy.
Using the AMA Guides Fourth Edition, she would have the following degree of impairment related to these conditions:
* * * Bilateral sprain/strain lumbosacral region — 0% impairment.
* * * L4-L5, L5-S1 herniated disc, preexisting lumbar degenerative disc disease and lumbar facet hypertrophy would equal to a DRE Lumbosacral Category V degree of impairment or a 25% whole person impairment.
Based on my examination, she would have a Physical Strength Rating of ability to sedentary work activities if she is allowed to change her position at will from sit to stand.
 {¶ 11} 4. Dr. Koppenhoefer also completed a physical strength rating form on which he indicated that relator is capable of performing sedentary work.
 {¶ 12} 5. On August 30, 2002, relator was examined at the commission's request by psychiatrist Donald L. Brown, M.D., who opined:
In my opinion, Mrs. Whaley has reached MMI with respect to her previously allowed psychogenic pain disorder NEC and it can be considered permanent. Utilizing the 4th Edition of the AMA Guides to the Determination of Permanent Impairment, I would rate her as having a Class III level of impairment. This is a moderate level of impairment. Referencing the percentages from the 2nd Edition in the 4th Edition, I would rate her level of impairment at 25-28%.
 {¶ 13} 6. Dr. Brown also completed an occupational activity assessment form dated August 30, 2002. On the form, Dr. Brown responded in the affirmative to the two part query:
Based on the impairment resulting from the allowed/allegedpsychiatric/psychological condition(s) only, can this injuredworker meet the basic mental/behavioral demands required:
[One] To return to any former position of employment?
[Two] To perform any sustained remunerative employment?
(Emphasis sic.)
 {¶ 14} 7. The commission requested an employability assessment report from Caroline Wolfe, a vocational expert. The Wolfe report, dated September 24, 2002, responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify (A) occupations which the claimant may reasonably be expected to perform, immediately and or (B) following appropriate academic remediation.
 {¶ 15} Indicating acceptance of Dr. Koppenhoefer's reports, and responding to the above query, Wolfe listed the following "employment options":
1A) Telephone quotation clerk, tube operator, animal shelter clerk, assembler of small items (optical goods, clocks/watches, compacts, jewelry), blood bank order control clerk.
1B) Dispatcher, receptionist, reservations clerk.
 {¶ 16} Indicating acceptance of Dr. Brown's report, and responding to the above query, Wolfe listed the following "employment options":
2A) Claimant can return to work as a department manager, sales clerk, rental clerk, demonstrator, stores laborer, sales attendant.
2B) Retraining is not necessary.
 {¶ 17} The Wolfe report states, under part III, "Effects of Other Employment Factors":
[One] Question: How, if at all, do the claimant's age, education, work history or other factors (physical, psychological and sociological) effect his/her ability to meet basic demands of entry level occupations?
Age: Age will not prevent re-employment.
Education: Lack of high school diploma or GED could be a barrier in seeking new employment.
Work History: Work experience reflects position of responsibility and skill over a long period of time.
* * *
[Two] Question: Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
Answer: Claimant is within the BWC age guidelines for formal rehab or training. She has tried to participate in a computer training program, and had a flare up of pain that prevented her from finishing.
[Three] Question: Are there significant issues regarding potential employability limitations or strengths which you wish to call to the SHO's attention?
* * * The claimant was referred for rehabilitation services. She has had physical therapy, aquatic therapy, and pain management intervention. She participated in job search, work conditioning, Vocational Evaluation, and training. She has a home exercise program. Her file was closed in 1/2000 because she was medically unstable. She later participated in computer training program in 1/2002, but the MCO requested closure on 2/4/2002 because of medical instability. She had quit the training after 8 days because of severe back pain. She had been attending only 3 hours a day.
(Emphasis sic.)
 {¶ 18} The Wolfe report states under part IV "Database for Employability Assessment":
* * * TESTED APTITUDES AND ACADEMIC ABILITIES (USDOL Coded):
Her scores in a Vocational Evaluation in August 2001 are as follows:
Verbal reasoning 13.3 grade Non-verbal reasoning 16.0 Quantitative reasoning 9.7 Reading vocabulary 15.0 Reading comprehension 13.0 Math calculation 6.7 Math application 11.7 Writing composition 11.3
It was recommended that she get her GED to increase vocational options. Her scores indicate that she should be able to pass the test. She also demonstrated good clerical skills (alphabetical filing, verifying numbers, payroll computation[)]. She had average aptitudes in language usage, word knowledge, andperceptual speed and accuracy. She had below average aptitudes in mechanical reasoning, spatial relations, verbal reasoning, numerical ability, and manual speed and dexterity. She displayed measurable aptitude in the vocational area of Business Skilledand Service Skilled.
She demonstrated a wide range of vocational interests.
Profile reflects the capabilities demonstrated by the work experience.
(Emphasis sic.)
 {¶ 19} 8. Following a December 11, 2002 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
The Staff Hearing Officer finds that injured worker's condition has become permanent and that she is unable to return to her former position of employment as a deli worker due to the allowed conditions in the claim.
Dr. Brown, psychiatrist, examined the injured worker at the request of the Industrial Commission on 08/30/02. Dr. Brown opined that the condition of psychogenic pain disorder would not prevent her from returning to her former position of employment or other forms of sustained remunerative employment. Dr. Brown opined that the injured worker has a moderate level of impairment.
Dr. Koppenhoefer, physical medicine and rehabilitation specialist, examined the inured worker at the request of the Industrial Commission on 08/30/02. Dr. Koppenhoefer opined that the injured worker has the physical strength rating of ability [to] do sedentary work activities if she is allowed to change her position at will from sit to stand. Sedentary work means exerting up to 10 pounds of force occasionally. Dr. Koppenhoefer noted sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.
The Staff Hearing Officer finds that the capabilities provided by Dr. Koppenhoefer and Dr. Brown are the capabilities the injured worker has as a result of the recognized conditions in the claim.
The Staff Hearing Officer finds that the injured worker is a middle-aged individual of 52 years of age, who has a 10th grade education. The Staff Hearing Officer finds the injured worker has worked as a stock clerk, warehouse worker, deli worker and bakery technician.
Caroline Wolfe, vocational expert for the Industrial Commission, opined in a report dated 09/24/02 that injured worker's work experience reflects positions of responsibility and skill over a long period of time. Ms. Wolfe, opined in injured worker's tested aptitudes, that she demonstrated good clerical skills and average aptitudes in language usage, work knowledge and perceptual speed and accuracy.
The Staff Hearing Officer finds that injured worker's age and work history are assets which will allow her to learn new work rules and procedures.
The Staff Hearing Officer finds that injured worker with the medical capabilities listed by Dr. Brown and Dr. Koppenhoefer together with her age of 52 and steady dependable work history render her capable of performing sustained remunerative employment.
The Staff Hearing Officer finds that the Industrial Commission has no duty to list specific jobs that the injured worker can perform. State ex rel. Longlott v. Indus. Comm. (Apr. 4, 2001), Franklin App. No. 99AP-881, unreported, affirmed91 Ohio St 3d 247.
The Staff Hearing Officer finds that the injured worker is able to engage in sustained remunerative employment.
All medical reports and vocational reports on file were reviewed and considered.
This order is based on reports of Dr. Brown, Dr. Koppenhoefer and Ms. Wolfe.
 {¶ 20} 9. On July 17, 2003, relator, Debbie Whaley, filed this mandamus action.
 {¶ 21} Conclusions of Law:
 {¶ 22} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 23} For its threshold medical determination, the commission, through its SHO, relied upon the medical reports of Dr. Koppenhoefer and Dr. Brown. Dr. Koppenhoefer found that the physical conditions of the claim permit sedentary employment. Dr. Brown concluded that the psychogenic pain disorder does not prevent a return to any former position of employment or to any sustained remunerative employment.
 {¶ 24} The commission found that the medical capabilities provided by Drs. Koppenhoefer and Brown are the capabilities that relator has as a result of the recognized conditions of the claim.
 {¶ 25} Here, relator does not challenge the commission's threshold medical determination nor the reports of Drs. Koppenhoefer and Brown.
 {¶ 26} Moreover, relator does not seem to challenge the Wolfe vocational report nor the commission's reliance upon that report. That is, relator points to no flaw in the Wolfe report and relator does not contend that the commission's reliance upon that report was an abuse of discretion.
 {¶ 27} Relator seems to argue that the commission abused its discretion by failing to address the implications of relator's rehabilitation failure and by failing to discuss the report of relator's vocational expert, William T. Cody. At page 20 of her brief, relator argues:
Such analysis ignores both the repeated failed attempts at rehab and the findings of claimant's expert, which are neither explained nor discussed by the Staff Hearing Officer. * * *
 {¶ 28} For purposes of clarifying relator's argument, the magistrate notes that the record contains a February 5, 2002 letter written by Vivian M. Branch, a vocational case manager for Medvoc Management, Inc. The letter is addressed to relator's attending physician, Richard Cutter, M.D., and states:
This letter comes to you in reference to your patient, Debbie Whaley. I am the Medical Vocational Case Manager assigned by MEDVOC Management, Inc., and Gates McDonald Health Plus, to coordinate vocational rehabilitation services as prescribed by you.
Upon contact with Career Blazers Learning Center, it was learned that Ms. Whaley attended the computer-training program for 8 days when she suddenly quit, complaining of severe back pain. The injured worker followed up with Dr. Holaday, DC who confirmed the injured workers complaint. However, prior to this incident, contact was made to your office, for the injured worker to participate in the computertraining program with the following schedule: 3 hours a day the first two weeks, 4 hours a day the next two weeks, and 6 hour[s] a day until she completed the program. You indicated that you would only approve the increments according to the injured workers physical ability to move forward. Based on Career Blazers report and Dr. Holaday's report, the injured worker has not demonstrated the ability to move forward in the program that would allow her to return to work and she has failed to return this case managers call with a scheduled appointment with you as originally agreed.
Therefore, I have been instructed by Gates McDonald Health Plus to close her case for vocational rehabilitation services as the inability to move forward. The effective date of closure is 02/04/02. Should she require vocational services in the future, feel free to make a referral. * * *
 {¶ 29} According to relator, "[t]here is no evidence in the record that Whaley's condition significantly improved following the closure of the rehabilitation file or that there was any abatement of her physical symptomology." (Relator's brief at 18-19.)
 {¶ 30} Apparently, relator is suggesting that the closure of her rehabilitation file is proof that she was PTD as of that date and that, in the absence of medical evidence opining that her allowed conditions have improved since that date, the commission must conclude that she is PTD. Relator's suggested argument is seriously flawed and lacks merit.
 {¶ 31} To begin, closure of relator's rehabilitation file does not compel the conclusion that relator was PTD. Moreover, the commission was not required to address any implications that may or may not be drawn from the closure.
 {¶ 32} Adjudication of relator's PTD application required the commission to render a medical determination and to render a nonmedical determination. The commission did both. The reports of Drs. Koppenhoefer and Brown which go unchallenged here, indicate that the industrial injury medically permits sustained remunerative employment. The Wolfe vocational report, which goes unchallenged here, indicates that the nonmedical factors permit sustained remunerative employment. Given the commission's explanation for its decision which is clearly supported by some evidence cited in the order, relator's rehabilitation failure is largely irrelevant.
 {¶ 33} Moreover, it is well-settled law that the commission is not required to explain why certain evidence was not relied upon. State ex rel. Lovell v. Indus. Comm. 1996),74 Ohio St.3d 250. The commission is only required to cite the evidence relied upon and to briefly explain the reasoning for its decision. Id. Accordingly, contrary to relator's suggestion here, the commission is not required to explain why it did not rely upon the Cody vocational report. Likewise, the commission was not required to explain why closure of the rehabilitation file was not found to be significant.
 {¶ 34} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /s/ Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE