DECISION
{¶ 1} Relator, Richard Rankin, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation, and to find that he is entitled to such compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed objections to the magistrate's decision.
 {¶ 3} Relator first argues that Dr. Donald Brown's report is equivocal and inconsistent. He claims Dr. Brown found he was in the normal range for reason, comprehension, and attention span; yet, Dr. Brown found a Class III psychological impairment, which is a moderate impairment level. Equivocal medical opinions are not evidence and have no probative value. State ex rel.Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id. However, as the magistrate explained in the present case, although Dr. Brown found relator's attention span was normal, Dr. Brown never found relator's comprehension and reason were at a normal range; rather, Dr. Brown stated that relator was able to comprehend and reason in a "somewhat concrete manner." Thus, these statements were not clearly contradictory. We also note that, in his objections herein, relator fails to rebut the magistrate's findings that relator waived this issue in mandamus because he failed to raise the equivocalness of Dr. Brown's report administratively. Thus, we find relator's argument, in this respect, without merit.
 {¶ 4} Relator also contends the commission's staff hearing officer ("SHO") failed to offer any basis or analysis as to how the non-medical factors, including his low IQ and limited reading, spelling, and math abilities, precluded him from being PTD. We disagree. The SHO specifically noted the commission's vocational expert, Robert Breslin, found that relator's tenth-grade education reflects his ability to perform the basic demands of entry-level occupations; there is nothing in his background indicating he cannot undergo academic and skilled training; and relator rated average in general learning ability, spatial aptitude, form perception, clerical perception, motor coordination, manual dexterity, and eye/hand/foot coordination. Thus, Breslin's conclusions support the SHO's determination that relator's young age is an asset to allow him to learn new work rules and procedures, and relator's tenth-grade education offers him the ability to meet the basic demands of entry-level occupations. Further, the SHO acknowledged Breslin's concerns that relator might have problems with a limited number of the possible enumerated jobs because of his psychological condition, but interpreted Breslin's concerns as meaning there is an equal chance that relator would or would not be able to do these jobs without difficulty or, at a minimum, do the jobs but have some difficulty doing them. The commission has broad discretion to evaluate and interpret vocational evidence. State ex rel. Ewartv. Indus. Comm. (1996), 76 Ohio St.3d 139. In addition, despite relator's argument that the SHO failed to address why he rejected the report of relator's vocational expert, Dr. Jennifer Stoeckel, the commission has the discretion to accept one vocational report while rejecting another, and the commission is not required to explain its reasons for doing so. See State ex rel. Jackson v.Indus. Comm. (1997), 79 Ohio St.3d 266. Therefore, it is clear that the SHO analyzed the non-medical factors and based his findings upon Breslin's report and deposition testimony. Accordingly, these arguments are without merit.
 {¶ 5} After an examination of the magistrate's decision, an independent review of the evidence, pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
Klatt, P.J., and Travis, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Richard Rankin, : :
Relator, : :
v. : No. 05AP-845 :
Cyned Transport Corporation and : Industrial Commission of Ohio, : :
Respondents. :
 MAGISTRATE'S DECISION Rendered on February 16, 2006 Butkovich, Crosthwaite Gast Co., L.P.A., Joseph A.Butkovich and Robert E. Hof, for relator.
Jim Petro, Attorney General, and Eric J. Tarbox, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} In this original action, relator, Richard Rankin, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 7} 1. On March 1, 1993, relator sustained an industrial injury while employed as a tractor trailer truck driver for respondent Cyned Transport Corporation, a state-fund employer. The industrial claim is allowed for "herniated disc L5-S1; post laminectomy syndrome; arachnoiditis; depressive disorder," and is assigned claim number L60786-27.
 {¶ 8} 2. On October 3, 2003, relator filed an application for PTD compensation.
 {¶ 9} 3. On December 12, 2003, relator was examined at the commission's request by Ron M. Koppenhoefer, M.D. Dr. Koppenhoefer wrote:
Based on my examination, Mr. Rankin has reached maximum medical improvement in regards to the allowed conditions under claim no. L60786-27, which are herniated disc at L5-S1, post-laminectomy syndrome and arachnoiditis.
* * *
When using the AMA Guides, 4th edition, and taking into effect all of the allowed conditions, he would have a DRE Lumbosacral Category III impairment or a 10% impairment to the body as a whole.
* * *
When taking into effect the allowed conditions in this claim, he is capable of physical work activity. I believe he could perform sedentary and light-duty work activities when taking into effect the allowed conditions in claim no. L60786-27.
It is noted that he might have some restrictions in regards to light work activities because of the multi-pharmacy which he is currently taking. This could interfere with his cognitive abilities to perform light duty or sedentary work activities.
It is noted on his physical exam that Mr. Rankin has severe osteoarthritis involving both hips which is accounting for his gait abnormality. He has limitation of motion involving the back as well as pain. This condition involving both hips is significant and severe. * * *
 {¶ 10} 4. On a physical strength rating form dated December 12, 2003, Dr. Koppenhoefer indicated that the industrial injury permits sedentary and light work.
 {¶ 11} 5. On December 19, 2003, relator was examined at the commission's request by psychiatrist Donald L. Brown, M.D. Dr. Brown wrote:
* * * He related in an open, cooperative, friendly and forth-right manner. I felt that he handled the interpersonal aspect of the examination well. His speech was coherent, spontaneous and goal directed. There was no evidence of a thought disorder nor history of hallucinations or delusions. His affect was in the normal range. There was no objective evidence of anxiety or depression. He described significant developmental trauma. He indicates that he has a tendency towards obsessional thinking. He was oriented to person, place, time and purpose of the examination. He seemed to be of low average or borderline intelligence. I note that Dr. Oleski got an FSIQ of 59 and I have no reason to disagree with that. He's able to comprehend and reason in a somewhat concrete manner. He is not psychologically-minded. His attention span and ability to concentrate were normal. His memory was intact for recent and remote events. There was no evidence of organicity.
DISCUSSION:
* * * He has, as the result of his injury, limitations, and chronic pain, developed some depression and has been allowed for depressive disorder. He is in treatment with Mr. Elkins and has found this helpful and I believe it should be continued. I believe with his medication and his psychotherapy that his previously allowed depressive disorder NEC has stabilized and is in fairly good remission though may wax and wane somewhat as he ruminates about his condition. I do not believe it would prevent him from returning to his former position of employment or other forms of sustained remunerative employment. I believe it would cause him mild impairment in activities of daily living, socialization, and concentration, persistence and pace with moderate impairment in adaptation.
OPINION:
In my opinion, Mr. Rankin has reached MMI with respect to his previously allowed depressive disorder NEC and it can be seen as permanent. Utilizing the Fourth Edition of the AMA Guides to the determination of Permanent Impairment, I'd rate him as having a Class III level of impairment. This is a moderate level of impairment. Referencing the percentages from the second edition in the fourth edition, I'd rate his impairment at 25%.
 {¶ 12} 6. On an occupational activity assessment form dated December 19, 2003, Dr. Brown indicated that the psychological claim allowance permits relator to return to any former position of employment and permits him to perform any sustained remunerative employment.
 {¶ 13} 7. In support of his PTD application, relator submitted a vocational report, dated February 26, 2004, from psychologist Jennifer J. Stoeckel, Ph.D., stating:
Summarily, within reasonable vocational and psychological certainty and without reservation, Mr. Rankin would be considered permanently and totally disabled from all work on the basis of his allowed physical and emotional conditions, residual impairment, limited 10th grade special education, mild mental retardation, functional illiteracy, and below average work aptitudes. Again, Mr. Rankin was functioning optimally performing unskilled to semi-skilled physical labor. Unfortunately, he does not possess the intellectual nor emotionally wherewithal to function in sedentary or lighter occupations.
 {¶ 14} 8. The commission requested an employability assessment from Robert E. Breslin, a vocational expert. The Breslin report, dated February 10, 2004, responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or (B) following appropriate academic remediation, or brief skill training.
 {¶ 15} First indicating acceptance of Dr. Brown's report, and responding to the above query, Breslin listed the following employment options that relator may reasonably be expected to perform immediately:
[OneA] Tractor Trailer Truck Driver; Assembler, Production Inspector; Cashier; Order Clerk, Food Beverage[;] Surveillance System Monitor; Hand Packager.
 {¶ 16} For Dr. Brown's report, Breslin listed the following employment options that relator may reasonably be expected to perform following appropriate academic remediation:
[OneB] Dispatcher, Radio; Information Clerk; Gate Guard; Quality Control Inspector.
 {¶ 17} Second, indicating acceptance of Dr. Koppenhoefer's report, and responding to the above query, Dr. Koppenhoefer indicated that the OneA and OneB employment options listed for Dr. Brown's report are also applicable to Dr. Koppenhoefer's report with the exception of tractor trailer truck driver.
Under "Effects of Other Employability Factors," Breslin wrote:
[One] Question: How, if at all, do the claimant's age, education, work history or other factor (physical, psychological and sociological) affect his/her ability to meet basic demands of entry level occupations?
Answer: Age: Age of 44 leaves 21 years of work-life expectancy. Middle age does not normally result in age-related impairments that interfere with the ability to meet the basic demands of entry level occupations.
Education: 10th grade education normally reflects ability to perform basic demands of entry level occupations.
Work History: Work history did not result in the acquisition of skills transferable to work at the sedentary or light levels of exertion.
Other: Claimant has been receiving $700. per month in Social Security disability since 1995.
[Two] Question: Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
Answer: There is no indication in the background data that the claimant would be incapable of participating in academic or skills training.
[Three] Question: Are there significant issues regarding potential employability limitations or strengths which you wish to call to the SHO's attention?
Answer: The claimant is a 44 year old man with a work history comprised of Tractor Trailer Truck Driving. This is classified as semi-skilled, medium work. The claimant did not acquire work skills transferable to semi-skilled or skilled work at the sedentary or light levels of exertion. The claim allowances include both orthopedic and psychological impairments.
Dr. Brown, who evaluated the claimant's psychological status for the Commission, felt that his Depressive disorder was resolving and did not see it as a barrier to returning to his former job or other jobs. Some jobs consistent with this estimate of residual functional capacity are found at II, 1AB.
Dr. Koppenhoefer, who evaluated the claimant's orthopedic condition for the commission, felt that he was capable of sedentary and light work. Jobs consistent with this opinion are found at II, 2AB. It may be significant to note that Dr. Koppenhoefer felt that the claimant's medication regimen might result in some limitations although he did not quantify those limitations for consideration in a vocational opinion.
Under "Employability Assessment Database," Breslin wrote:
B. WORK HISTORY:
 Job Title * * * Skill Level Strength Level Dates Tractor-Trailer Truck Driver * * * Semi-skilled Medium 1984-1993
C. EDUCATIONAL HISTORY:
 Highest grade completed: 10th grade Date of last attendance: 1975 H.S. graduate: No GED: No Vocational training: None ICO Educational Classification: Limited education
 {¶ 18} 9. On March 11, 2004, relator moved for leave to depose Breslin. The commission granted the motion.
 {¶ 19} 10. Relator also requested leave to submit interrogatories to Dr. Koppenhoefer. In a letter to the commission hearing administrator, relator's counsel propounded nine questions or interrogatories to Dr. Koppenhoefer. Consequently, by letter or report dated September 14, 2004, Dr. Koppenhoefer responded to the interrogatories:
Mr. Rankin's ability to sit at this time is limited by his severe osteoarthritis of his hips more than his back condition. In regards to the allowed conditions in this claim, he would be able to sit for eight hours a day. He should be able to change his position for comfort purposes. I believe taking into effect solely the allowed conditions in this claim, he would be able to sit for at least 30 minutes at a time.
Mr. Rankin's ability to stand or walk is limited by his osteoarthritis involving his hips. In taking into effect solely the allowed conditions in this claim, I believe he could stand and walk intermittently throughout an eight hour day without interruption. I believe he could stand or walk for at least 30 minutes at a time.
 {¶ 20} 11. On May 13, 2005, relator, through counsel, deposed Breslin. The deposition was recorded and transcribed for the record.
 {¶ 21} 12. Following a July 8, 2005 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO order explains:
The Staff Hearing Officer finds that the injured worker's condition has become permanent and that he is unable to return to his former position of employment as a truck driver due to the allowed conditions in the claim. Dr. Koppenhoefer, physical medicine and rehabilitation specialist, examined the injured worker at the request of the Industrial Commission on December 12, 2003. Dr. Koppenhoefer opined that the injured worker is capable of engaging in physical work activity including sedentary work and light work. Dr. Koppenhoefer opined that sedentary work means exerting up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently. Dr. Koppenhoefer opined that sedentary work means exerting up to 10 pounds of force occasionally. Dr. Koppenhoefer opined that sedentary work involves sitting most of the time but may involve walking or standing for brief periods of time. Dr. Koppenhoefer noted on his physical exam that Mr. Rankin has severe osteoarthritis involving both hips which is accounting for his gait immorality. Dr. Koppenhoefer opined that this condition involving both hips is significant and severe.
The Staff Hearing Officer finds that the existence of non-allowed conditions does not preclude an award of permanent and total disability for the injured worker. The Staff Hearing Officer finds that the key question is whether the allowed conditions in and of themselves, prevent the injured worker from engaging in sustained remunerative employment. State ex rel.Waddle v. Industrial Commission (1993) 67 Ohio St. 3d 45. Dr. Donald L. Brown, psychiatrist, examined the injured worker at the request of the Industrial Commission on December 19, 2003. Dr. Brown opined that the injured worker is able to comprehend in reason in an [sic] somewhat concrete manner. Dr. Brown opined that the injured worker's attention span and concentration were normal. Dr. Brown opined that the injured worker's depressive disorder would cause mild impairment in activities of daily living, socialization and concentration, persistence in pace with moderate impairment and adaptation. The Staff Hearing Officer finds that the capabilities provided by Dr. Koppenhoefer and Dr. Brown are the capabilities the injured worker has [as] a result of the recognized conditions in the claim.
Dr. Koppenhoefer in an addendum report dated September 14, 2004 opined that the injured worker could stand and walk intermittently throughout an eight hour day without interruption. Dr. Koppenhoefer opined that the injured worker could stand and walk for at least 30 minutes at a time. Dr. Koppenhoefer based these capabilities solely on the allowed conditions in the claim. Dr. Koppenhoefer again indicated that Mr. Rankin's ability to stand and walk is limited by his osteoarthritis involving his hips.
The Staff Hearing Officer finds that the injured worker is 45 years of age who has obtained a tenth grade education. The Staff Hearing Officer notes some of his education was in special education classes. The Staff Hearing Officer finds that the injured worker has worked as a tractor trailer/truck driver in his work career.
Mr. Robert Breslin, vocational expert for the Industrial Commission in a report dated February 10, 2004 indicated that the injured worker's education in tenth grade normally reflects the ability to perform the basic demands of entry level occupations. Mr. Breslin indicated that there is no indication in the injured worker's background that the injured worker would be incapable of participating in academic or skilled training. Mr. Breslin opined in the injured worker's adjusted worker trade profile that the injured worker rated average in general learning ability, form perception, clerical perception, motor coordination, manual dexterity and eye/hand/foot coordination. Mr. Breslin further opined that the injured worker rated above average in spatial aptitude.
Mr. Breslin in a deposition dated May 13, 2005 opined when considering the injured worker's allowed conditions in the claim that the injured worker was capable of engaging in various job activities. Mr. Breslin opined on page 30 of the deposition that the injured worker because of the psychological condition may have difficulty with jobs as a radio dispatcher, information clerk, gate guard, quality control inspector. The Hearing Officer finds that Mr. Breslin opined that the injured worker might have difficulty with these jobs. The Hearing Officer interprets this statement to mean that there is an equal chance that he would be able to do these jobs without difficulty or at a minimum do the jobs but have some difficulty doing those. The Hearing Officer finds that Mr. Breslin, in his deposition transcript, indicated that the injured worker would be capable of engaging in jobs including hand packager, surveillance system monitor, assembler, handler and production inspector.
The Staff Hearing Officer finds that the injured worker's young age of 45 is an asset which allow [sic] him to learn new work rules and procedures. The Staff Hearing Officer finds that the injured worker's education being tenth grade despite being some in special education offers him the ability to meet the basic demands of entry level occupations.
The Staff Hearing Officer finds that the injured worker with medical capabilities listed by Dr. Koppenhoefer and Dr. Brown together with his age of 45 render him capable of performing sustained remunerative employment. Accordingly, the Staff Hearing Officer finds that the injured worker is able to engage in sustained remunerative employment.
All medical reports and vocational reports on file were reviewed and considered.
This order is based upon the medical reports of Dr. Koppenhoefer dated December 12, 2003 and September 14, 2004, medical report of Dr. Brown dated December 19, 2003, the vocational report of Mr. Breslin dated February 10, 2004 and the deposition of Mr. Breslin dated May 13, 2005 and filed June 2, 2005.
 {¶ 22} 13. On August 15, 2005, relator, Richard Rankin, filed this mandamus action.
Conclusions of Law:
 {¶ 23} Two issues are presented: (1) whether the report of Dr. Brown constitutes some evidence upon which the commission can rely; and (2) whether the report and deposition of Breslin constitutes some evidence upon which the commission can rely.
 {¶ 24} The magistrate finds: (1) Dr. Brown's report does constitute some evidence upon which the commission can rely; and (2) the report and deposition of Breslin does constitute some evidence upon which the commission can rely.
 {¶ 25} Turning to the first issue, it is settled law that equivocal medical opinions are not evidence. State ex rel.Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 657. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions or fails to clarify an ambiguous statement. Id. It has also been held that a medical report can be so internally inconsistent that it must be eliminated from evidentiary consideration. State ex rel. Lopezv. Indus. Comm. (1994), 69 Ohio St.3d 445; State ex rel. Taylorv. Indus. Comm. (1995), 71 Ohio St.3d 582.
 {¶ 26} Citing Eberhardt, relator argues in his brief:
* * * In the case at bar, Dr. Brown opined that the Relator was in the normal range for reason comprehension and attention span (Stip. 2). Besides standing in direct contrast to Dr. Stoeckel's psychological report in which objective testing found the Relator to function at the mild mentally retarded range with an IQ in the mid 60's, Dr. Brown's assertions were also inconsistent with his own finding of a Class III psychological impairment — a moderate level of impairment. Accordingly, the reliance by the SHO on Dr. Brown's psychological report, was inappropriate and an abuse of discretion.
(Relator's brief, at 11.)
 {¶ 27} The argument that appears in relator's brief lacks merit. To begin, equivocation cannot be established by comparing or contrasting Dr. Brown's report with Dr. Stoeckel's report. Dr. Stoeckel's report is irrelevant to the question of whether Dr. Brown's report is equivocal or so internally inconsistent that it must be eliminated from evidentiary consideration.
 {¶ 28} In his report, Dr. Brown actually states: "He's able to comprehend and reason in a somewhat concrete manner. * * * His attention span and ability to concentrate were normal."
 {¶ 29} Dr. Brown's statement that relator is able to reason "in a somewhat concrete manner" cannot properly be translated to mean that relator "was in the normal range for reason comprehension." Dr. Brown did not opine that relator's ability to reason or comprehend is normal, as relator seems to suggest in his brief.
 {¶ 30} The argument presented in relator's brief is premised upon a misinterpretation of Dr. Brown's report and thus lacks merit.
 {¶ 31} At oral argument before the magistrate, relator's counsel expanded the argument. At oral argument, counsel argued that Dr. Brown's opinion that relator has a Class III level of impairment which is said to be "a moderate level of impairment" is inconsistent with Dr. Brown's clinical findings.
 {¶ 32} For example, it was pointed out at oral argument that Dr. Brown could find "no objective evidence of anxiety or depression."
 {¶ 33} Even if it can be argued that a Class III level of impairment and an impairment rating of 25 percent are inconsistent with Dr. Brown's clinical findings, such as no objective evidence of anxiety or depression, relator is not entitled to removal of Dr. Brown's report from evidentiary consideration.
 {¶ 34} First of all, it is difficult to see how relator was prejudiced by a medical report in which the doctor allegedly concluded that the impairment was greater than the clinical findings will support.
 {¶ 35} Moreover, it is settled law that issues not raised administratively cannot ordinarily be raised or reviewed in mandamus. State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78, 81-84. There is no evidence in the record showing that relator challenged Dr. Brown's report as being equivocal or internally inconsistent nor does relator even claim in this action that he administratively challenged Dr. Brown's report.
 {¶ 36} Moreover, the record here strongly suggests that relator did not challenge Dr. Brown's report administratively. Relator submitted interrogatories to Dr. Koppenhoefer and took the deposition of Breslin. There is no corresponding indication in the record that relator was dissatisfied with Dr. Brown's report prior to initiating this mandamus action.
 {¶ 37} Turning to the second issue, in his brief, relator cites to portions of the deposition transcript of Breslin to support his argument that the SHO "misinterpreted" Breslin's testimony. (Relator's brief, at 12.) Relator also suggests that the SHO's findings on the vocational analysis are in conflict with Breslin's deposition testimony. The magistrate disagrees.
 {¶ 38} Very early in the deposition, relator's counsel reviewed Dr. Stoeckel's report with Breslin and asked him to accept the accuracy of Dr. Stoeckel's testing results on the Wechsler Adult Intelligence Scale ("WAIS") and the Wide Range Achievement Test ("WRAT"). (Deposition transcript, at 22.) The magistrate notes parenthetically that, on the WAIS III, Dr. Stoeckel scored relator for a full scale IQ of 66 and, on the WRAT III, Dr. Stoeckel scored relator at grade 1 for reading and spelling and grade 2 for arithmetic.
 {¶ 39} Significantly, the commission did not rely upon Dr. Stoeckel's report or her testing results in reaching its decision to deny PTD compensation. Accordingly, Breslin's deposition testimony based upon his requested acceptance of Dr. Stoeckel's testing results is irrelevant to the commission's decision and clearly cannot be held to be in conflict with the commission's vocational analysis.
 {¶ 40} During his deposition testimony, Breslin was questioned about Dr. Brown's report. At that point, Breslin stated that "with a more than mild impairment" relator might have difficulty with the so-called "1B" jobs listed in his report because those employment options are "more interactive." Breslin further stated that information clerk, dispatching clerk, and gate guard clerk have social aspects and thus "might be affected" by the impairment. (Deposition transcript, at 30.) The magistrate notes that Dr. Brown opined in his report that relator has a "moderate level of impairment."
 {¶ 41} The SHO correctly addressed this issue in his order. Breslin did not testify that he had changed his opinion that relator could perform the so-called "1B" jobs that are more social and interactive. He simply stated that performance of those jobs "might be affected" by a "more than mild impairment." (Deposition transcript, at 30.) The SHO did not misinterpret Breslin's deposition testimony nor render an analysis in conflict with the deposition testimony.
 {¶ 42} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.