[Cite as *State ex rel. Kaminski v. Indus. Comm.*, 2025-Ohio-4663.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Wayne T. Kaminski, | : | |
| Relator, | : | No. 23AP-632 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on October 9, 2025

**On brief:** *Urban Co., L.P.A.*, and *Anthony P. Christine*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Michael A. Wehrkamp*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

EDELSTEIN, J.

{¶ 1} Relator, Wayne T. Kaminksi, initiated this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to approve his request for permanent total disability ("PTD") compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate determined the commission did not abuse its discretion in denying Mr. Kaminski's application for PTD

compensation as there was some evidence in the record to support the commission's decision. Thus, the magistrate recommends we deny Mr. Kaminski's request for a writ of mandamus.

{¶ 3} Mr. Kaminski filed objections to the magistrate's decision. Therefore, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

## I. Background

{¶ 4} As set forth more fully in the magistrate's decision, Mr. Kaminski sustained a workplace injury in March 2011 during his employment with respondent, A.P. O'Horo Company. Mr. Kaminski filed an application for workers' compensation benefits, and his claim initially was allowed for the following conditions: sprain lumbrosacral; sprain of neck; sprain left shoulder; closed acromion fracture, left shoulder; os acromial deformity, left shoulder; left bicipital tenosynovitis; adjustment disorder with depression; major depressive disorder, single episode, severe without psychotic features; substantial aggravation of preexisting left shoulder rotator cuff tendinosis; and adhesive capsulitis of left shoulder. Mr. Kaminski's claim was disallowed for sprain left rotator cuff; brachial neuritis; disc protrusion C4-C5; disc protrusion C5-C6; and disc protrusion C6-C7.

{¶ 5} In the five years after his workplace injury, Mr. Kaminiski underwent four different surgical procedures. In 2013, after his second surgical procedure, Mr. Kaminski received a referral to vocational rehabilitation services for assistance with returning to work. Mr. Kaminski participated in 17 weeks of vocational training and attended a work adjustment program. Eventually, Mr. Kaminski participated in a training program for Computer Numerical Control ("CNC") Operation and Programming, graduated from the program, and secured employment as a CNC operator, returning to work in July 2014.

{¶ 6} Mr. Kaminski remained employed at the same place of employment from July 2014 until May 9, 2017, when he underwent his fourth surgical procedure. In a January 11, 2019 order, the Bureau of Workers' Compensation ("BWC") issued an order granting Mr. Kaminski temporary total disability ("TTD") benefits beginning December 11, 2018.

{¶ 7}  On November 15, 2022, Mr. Kaminski underwent an examination by Kenneth Gruenfeld, Psy.D., to evaluate the extent of Mr. Kaminski's disability related to the allowed psychological conditions.  Dr. Gruenfeld opined that Mr. Kaminski was unable to return to work at his former position due to "mild to moderate impairment in Social Functioning and Adaptation to Stress" based on the allowed psychological conditions. (Stip. at 41.)  Dr. Gruenfeld found Mr. Kaminski had reached maximum medical improvement.  Additionally, Dr. Gruenfeld opined Mr. Kaminski was able to work four hours per day, two days per week.

{¶ 8}  On January 12, 2023, Mr. Kaminski filed an application for PTD compensation, supporting his application with the opinions of Dr. Michael Weaver, D.C., and Dr. Robert Roerich, M.D.  Both Dr. Weaver and Dr. Roerich opined that Mr. Kaminski was permanently and totally disabled.

{¶ 9}  The commission requested Mr. Kaminski undergo two independent medical evaluations, one for his allowed physical conditions and one for his allowed psychological conditions.  Dr. Richard Reichert, M.D., found Mr. Kaminski's physical conditions resulted in 16 percent whole person impairment and found Mr. Kaminski was capable of sedentary work with further limitations related to limited use of his left arm and allowing his use of a sling.  Dr. Andrea Loucaides, Ph.D., found Mr. Kaminski's psychological conditions had reached maximum medical improvement and that Mr. Kaminski had a class II, mild impairment of 23 percent.  Dr. Loucaides opined Mr. Kaminski was "capable of working in some capacity" and "would do better working independently in a position with minimal social contact" and "completing simple tasks at his own pace."  (Stip. at 34.)

{¶ 10}  Following an August 9, 2023 hearing, a staff hearing officer ("SHO") issued an August 29, 2023 order denying Mr. Kaminski's request for PTD compensation.  The SHO relied on the reports of Dr. Reichert and Dr. Loucaides to conclude that although Mr. Kaminski's conditions had reached maximum medical improvement, Mr. Kaminski was capable of working in a sedentary capacity in a position that would allow for independent work at his own pace.  Additionally, the SHO noted Mr. Kaminski had not pursued another course of vocational rehabilitation since his prior use of the services in 2013 and 2014.  The SHO noted Mr. Kaminski was 48 years old at the time of the hearing and found his age and

educational history to be positive factors supporting his ability to seek additional training and develop additional skills.

{¶ 11} Mr. Kaminski requested reconsideration of the SHO's August 29, 2023 order denying his application for PTD compensation. The commission denied his request for reconsideration in a September 23, 2023 order. Mr. Kaminski then filed the instant complaint for a writ of mandamus on October 17, 2023.

{¶ 12} As referenced above, the magistrate determined the commission did not abuse its discretion in denying Mr. Kaminski's application for PTD compensation. More specifically, the magistrate found the commission was not required to list or address evidence it did not rely upon in reaching its decision, and the commission did not abuse its discretion in stating it reviewed and considered all evidence on file. Additionally, the magistrate concluded there was some evidence in the record to support the commission's determination that Mr. Kaminski was medically capable of performing sedentary work. Finally, the magistrate found the commission did not abuse its discretion in considering Mr. Kaminski's participation in vocational rehabilitation services. For these reasons, the magistrate recommended this court deny Mr. Kaminski's request for a writ of mandamus.

{¶ 13} Mr. Kaminski filed four objections to the magistrate's decision. Mr. Kaminski does not challenge the magistrate's recitation of the pertinent facts; however, Mr. Kaminski objects to the magistrate's conclusion that the commission did not abuse its discretion in denying his request for PTD compensation. We address each of Mr. Kaminski's objections in turn.

## II. Law and Analysis

{¶ 14} To be entitled to a writ of mandamus, Mr. Kaminski must demonstrate a clear legal right to the relief sought, that the commission has a clear legal duty to provide such relief, and that there is no adequate remedy in the ordinary course of law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 162-63 (1967). Mandamus may lie if the commission abused its discretion by entering an order unsupported by evidence in the record or if there is a legal basis to compel the commission to perform its duties in accordance with law. *State ex rel. Cassens Corp. v. Indus. Comm.*, 2024-Ohio-526, ¶ 10. If some evidence exists in the record to support the commission's findings, this court may not

"second-guess the commission's evaluation of the evidence." *State ex rel. Black v. Indus. Comm.*, 2013-Ohio-4550, ¶ 22.

**A. First Objection**

{¶ 15} In his first objection, Mr. Kaminski argues the magistrate erred in finding the commission need not separately analyze the opinion of Dr. Gruenfeld.

{¶ 16} As the Supreme Court of Ohio has explained, while "[t]he commission is required to *consider* all of the evidence that is properly before it, . . . the commission is not required to list in its order each piece of evidence that it has considered," but instead "the commission's order need list only the evidence that the commission *relied on* in reaching its conclusion." (Emphasis sic.) *State ex rel. Digiacinto v. Indus. Comm.*, 2020-Ohio-707, ¶ 15, citing *State ex rel. Buttolph v. Gen. Motors Corp., Terex Div.*, 79 Ohio St.3d 73, 77 (1997), and *State ex rel. Metz v. GTC, Inc.*, 2015-Ohio-1348, ¶ 14. Here, the commission stated it considered all of the evidence and determined, based on the reports of Drs. Reichert and Loucaides, that Mr. Kaminski was not permanently and totally disabled. Because the commission identified the evidence upon which it relied in making its decision, the magistrate appropriately concluded the commission was not required to separately analyze Dr. Gruenfeld's opinion.

{¶ 17} To the extent Mr. Kaminski argues the commission should have separately analyzed and relied upon Dr. Gruenfeld's opinion, we note this court is not permitted to reweigh the evidence before the commission. *State ex rel. Prinkey v. Emerine's Towing, Inc.*, 2024-Ohio-1137, ¶ 14 (10th Dist.), quoting *State ex rel. Perez v. Indus. Comm.*, 2016-Ohio-5084, ¶ 20 (" '[t]he commission is the exclusive fact-finder with sole responsibility to evaluate the weight and credibility of the evidence' "). Moreover, we note that even if the commission had separately analyzed Dr. Gruenfeld's opinion, that opinion does not support Mr. Kaminski's position that he is entitled to PTD compensation. Though Dr. Gruenfeld evaluated Mr. Kaminski to render an opinion regarding the extent of his disability as it relates to his allowed psychological conditions, Dr. Gruenfeld did not render an opinion on whether Mr. Kaminski was permanently and totally disabled. Thus, we disagree with Mr. Kaminski's characterization of Dr. Gruenfeld's report.

{¶ 18} Because the magistrate correctly determined the commission need not separately analyze Dr. Gruenfeld's report, we overrule Mr. Kaminski's first objection to the magistrate's decision.

### B. Second Objection

{¶ 19} In his second objection to the magistrate's decision, Mr. Kaminski argues the magistrate erred in concluding there was some evidence to support the commission's finding that Mr. Kaminski is capable of sedentary work. More specifically, Mr. Kaminski asserts the commission and the magistrate should have explained how the restrictions contained in Dr. Reichert's report impact Mr. Kaminski's exertional level.

{¶ 20} Mr. Kaminski relies on *State ex rel. Hobart v. Indus. Comm.*, 2018-Ohio-2853 (10th Dist.), for the proposition that the commission cannot rely on a physician's "bottom line" identification of an exertional capacity but must examine the specific restrictions imposed by the physician to determine the level of work of which the claimant is capable. *Id*. at ¶ 8. In *Hobart*, this court concluded a doctor's report did not provide some evidence to determine residual functional capacity because the report contained findings that were inconsistent with the definition of light work. *Id*. at ¶ 7-8.

{¶ 21} We agree with the magistrate here that *Hobart* is distinguishable from the instant case. As the magistrate notes, Mr. Kaminski does not identify any internal inconsistencies in Dr. Reichert's report. Instead, Dr. Reichert's report contained restrictions on Mr. Kaminski's capabilities that are consistent with the definition of sedentary work in Adm.Code 4121-3-34(B)(2)(a), and Dr. Reichert completed a physical strength rating form that included the definition of sedentary work. Thus, we agree with the magistrate that the commission had some evidence to conclude Dr. Reichert was aware of the physical demands of sedentary work when he indicated that Mr. Kaminski was capable of sedentary work with restrictions.

{¶ 22} We further agree with the magistrate that *Hobart* is distinguishable because the claimant in *Hobart* was found capable of light work while Mr. Kaminski was found capable of sedentary work. Additionally, Mr. Kaminski's restrictions do not involve his dominant hand or arm, unlike the claimant in *Hobart* whose restrictions related to her dominant hand and were therefore more related to her actual ability to perform light work

as that term is defined in the Administrative Code. Lastly, unlike in *Hobart*, the commission did not ignore Dr. Reichert's specific restrictions but actually referred to those restrictions in summarizing the report. Accordingly, *Hobart* has no application to this matter. *See State ex rel. Kidd v. Indus. Comm.*, 2023-Ohio-2975, ¶ 26 (where the SHO did not ignore the specific restrictions imposed by the doctor and outlined in the body of the medical report, the proposition that the commission cannot rely on a "bottom line" identification of an exertional category is not applicable).

{¶ 23} Because Dr. Reichert's report was not internally inconsistent and the commission did not ignore the specific restrictions imposed by the doctor in evaluating Mr. Kaminski's application for PTD compensation, Dr. Reichert's report constituted some evidence upon which the commission could rely. Therefore, we overrule Mr. Kaminski's second objection to the magistrate's decision.

## C. Third Objection

{¶ 24} In his third objection to the magistrate's decision, Mr. Kaminski argues the magistrate erred in concluding the commission did not abuse its discretion in considering Mr. Kaminski's participation in vocational rehabilitation.

{¶ 25} Mr. Kaminski asserts, as he did in the proceedings before the magistrate, that the commission violated his due process rights when it considered evidence of his vocational rehabilitation efforts. However, his argument under this objection is not entirely clear, and, as the magistrate notes, Mr. Kaminski does not point to anything in the record to support this allegation. Without any evidence in the record to support his claim, we agree with the magistrate that we must presume the regularity of the proceedings. *State ex rel. Lovell v. Indus. Comm.*, 74 Ohio St.3d 250, 252 (1996). *See State ex rel. Brady v. Indus. Comm.*, 28 Ohio St.3d 241, 242 (1986) ("decisions that come to us from the commission have a presumption of regularity").

{¶ 26} In considering an application for PTD compensation, "the commission must consider the nonmedical factors of age, education, and work history, in addition to other factors, such as physical, psychological, and sociological factors." *State ex rel. Sears Roebuck & Co. v. Davy*, 2010-Ohio-87, ¶ 11 (10th Dist.), citing *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 173 (1987). Vocational evidence relates to the

commission's evaluation of the nonmedical factors, and "[t]he commission has broad discretion to evaluate and interpret vocational evidence." *State ex rel. Rankin v. Cyned Transp. Corp.*, 2006-Ohio-2962, ¶ 4 (10th Dist.), citing *State ex rel. Ewart v. Indus. Comm.*, 76 Ohio St.3d 139, 141 (1996). Though Mr. Kaminski disagrees with the weight the commission afforded the evidence of his vocational rehabilitation, he does not demonstrate that the commission abused its discretion in considering the vocational evidence as part of its evaluation of the relevant nonmedical factors. Accordingly, we overrule Mr. Kaminski's third objection to the magistrate's decision.

### D. Fourth Objection

{¶ 27} In his fourth and final objection to the magistrate's decision, Mr. Kaminski argues the magistrate erred in concluding the commission complied with *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991). Mr. Kaminski asserts the commission failed to explain its reasoning.

{¶ 28} The Supreme Court has repeatedly held that "[i]n an order granting or denying benefits to a claimant, the commission must 'specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision.' " *State ex rel. Merritt v. Indus. Comm.*, 2020-Ohio-4379, ¶ 3, quoting *Noll* at syllabus. The commission abuses its discretion when it fails to comply with the *Noll* requirements. *Id.*, citing *State ex rel. Gemind v. Indus. Comm.*, 82 Ohio St.3d 457, 460 (1998).

{¶ 29} Mr. Kaminski argues the commission failed to explain the reasoning for its decision denying his application for PTD compensation. However, we disagree with Mr. Kaminski's characterization of the commission's decision. The commission provided summaries of the reports of Drs. Reichert and Loucaides and specifically stated it found those opinions persuasive and accepted those opinions. The commission then conducted an analysis of the nonmedical disability factors before concluding Mr. Kaminski had not exhausted all reasonable means of returning to remunerative employment. Thus, the commission complied with *Noll* when it both specifically identified the evidence upon which it relied and provided a brief explanation for its reasoning. Therefore, we overrule Mr. Kaminski's fourth and final objection to the magistrate's decision.

## III. Disposition

{¶ 30} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate properly applied the relevant law to the salient facts in reaching the conclusion that there was some evidence to support the commission's determination that Mr. Kaminski is not entitled to PTD compensation. Therefore, we adopt the magistrate's findings of fact and conclusions of law and overrule Mr. Kaminski's objections to the magistrate's decision. In accordance with the magistrate's decision, we deny Mr. Kaminski's request for a writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

JAMISON, P.J. and BOGGS, J., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Wayne T. Kaminski, | : | |
| Relator, | : | |
| v. | : | No. 23AP-632 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on May 29, 2025

*Urban Co.*, *L.P.A.*, and *Anthony P. Christine*, for relator.

*Dave Yost*, Attorney General, and *Michael A. Wehrkamp,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 31} Relator Wayne T. Kaminski requests the issuance of a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to approve Kaminski's request for permanent total disability compensation. For the following reasons, the magistrate recommends this court deny the request for a writ of mandamus.

**I. Findings of Fact**

{¶ 32} 1. On March 17, 2011, Kaminski suffered an injury to his left shoulder in the course of and arising out of his employment with respondent A.P. O'Horo Company when

he slipped on a piece of plastic at the top of a trench and fell onto an exposed sewer pipe. Kaminski's claim was ultimately allowed for sprain lumbrosacral; sprain of neck; sprain left shoulder; closed acromion fracture, left shoulder; os acromial deformity, left shoulder; left bicipital tenosynovitis; adjustment disorder with depression; major depressive disorder, single episode, severe without psychotic features; substantial aggravation of preexisting left shoulder rotator cuff tendinosis; adhesive capsulitis of left shoulder. Kaminski's claim was ultimately disallowed for sprain left rotator cuff; brachial neuritis; disc protrusion C4-C5; disc protrusion C5-C6; disc protrusion C6-C7.

{¶ 33} 2. Following his injury, Kaminski underwent four different surgical procedures in approximately five years. On April 5, 2012, Kaminski underwent a left shoulder arthroscopic decompression, with excision of painful os acromiale. On January 10, 2013, Kaminski underwent a left arthroscopic biceps tendon release and open subpectoral biceps tenodesis using Arthrex biceps swivel lock. On December 11, 2015, Kaminski underwent a left shoulder arthroscopic aubacromial decompression, with open excision of the distal clavicle. On May 9, 2017, Kaminski underwent a left shoulder arthroscopy, with subacromial bursectomy and debridement of the acromioclavicular joint.

{¶ 34} 3. On September 17, 2013, following his second surgical procedure, Kaminski was referred to vocational rehabilitation services for assistance with returning to work. Kaminski participated in vocational rehabilitation services beginning with an initial assessment on September 25, 2013 through the closure of the vocational rehabilitation case on August 25, 2014. Services rendered during the case included: 17 weeks of training in "CNC Operation & Programming"; 14 weeks of job placement; 3

weeks of "JSST"; 1 week of "Work Adjustment, Facility based"; 5 weeks total of "Return to Work, VR Case Management follow along"; and "Tools & Equipment (CNC Tools required for job)." (Stip. at 44.)

{¶ 35} In a Bureau of Workers' Compensation ("bureau") vocational rehabilitation closure report (also referred to as an "RH-21"), Tamara Tabor-Glancy, M.Ed., provided a narrative overview of the case and justification for closure. Tabor-Glancy stated that following initial programming, "it was discussed that a Work Adjustment program may be beneficial prior to Job Search in order to enhance computer skills and various soft work skills for work within the light job range." (Stip. at 45.) Kaminski agreed and attended a work adjustment program from December 9 through December 15, 2014. Tabor-Glancy stated that a work adjustment setting "was not a good fit for [Kaminski]," because, while Kaminski was "compliant, attending all days and tried to complete all tasks . . . he was not comfortable in an office setting and could not find the benefit in the work he was being asked to do (computer tutorials)." *Id.* Following a meeting between Tabor-Glancy, Kaminski, and the work adjustment case manager, Tabor-Glancy stated that "[a]ll agreed that Mr. Kaminski was just not suited for such an environment and could not understand the benefits of the services being provided." *Id.*

{¶ 36} Tabor-Glancy and Kaminski thereafter discussed "possible training options, as [Kaminski] had little to no transferable skills for lighter jobs and he had made a higher than average wage." (Stip. at 45.) As a result, Kaminski "completed the requested research and located training programs for CNC Operation and Programming." *Id.* Kaminski began classes on February 17, 2014 and graduated from the program on June 16, 2014. Tabor-Glancy noted that Kaminski "did very well in training," with monthly reports

reflecting that Kaminski was often achieving "100% scores on tests and perfect attendance." *Id*. Kaminski was able to secure employment as a CNC operator and returned to work in July 2014.

{¶ 37} 4. Following his return to work in July 2014, Kaminski remained employed at the same place of employment until May 9, 2017, the date of his fourth surgical procedure.

{¶ 38} 5. The bureau issued an order on May 2, 2017 granting Kaminski temporary total disability benefits beginning April 30, 2017. In an order dated January 11, 2019, the bureau granted Kaminski temporary total disability benefits beginning December 11, 2018.

{¶ 39} 6. Kaminski was examined by Kenneth Gruenfeld, Psy.D., on November 15, 2022 for purposes of evaluating the extent of disability related to the allowed psychological conditions in the claim. In a bureau independent medical examination report, Dr. Gruenfeld summarized the results of Kaminski's mental status examination, relevant personal history, psychological testing, and the records reviewed as part of the examination. Dr. Gruenfeld then provided opinions in response to a series of questions. Dr. Gruenfeld opined that Kaminski was unable to return to work at his former position of employment as he "exhibit[ed] mild to moderate impairment in Social Functioning and Adaptation to Stress" based solely on the allowed psychological conditions. (Stip. at 41.) Dr. Gruenfeld noted that based on Kaminski reporting he had last worked "for Haiss Fabric Parts doing . . . C&C work for 2 years from 2016 – 2018 'when I hurt my shoulder again.' " *Id*. To a reasonable degree of psychological certainty, Dr. Gruenfeld found that Kaminski had achieved maximum medical improvement as records offered "no evidence

of treatment gains" from over 300 treatment sessions. *Id.* Dr. Gruenfeld noted two reports

from the mental health summary as evidence:

> According to the Mental Health Notes Summary, dated April 27, 2022, he exhibited adequate impairment in self-care, mild impairment in Activities of Daily Living, mild to moderate impairment in Social Functioning, adequate concentration, and mild to moderate impairment in Adaptation to Stress. According to the Mental Health Notes Summary, dated September 12, 2022, he exhibited mild impairment in self-care, mild impairment in Activities of Daily Living, moderate impairment in Social Functioning, adequate concentration, and mild to moderate impairment in Adaptation to Stress.

*Id.* In order "to help with case management for this injured worker, which may include

development and management of an individualized care plan or facilitation of a return to

work," Dr. Gruenfeld was also directed to complete a disability evaluator panel physician's

report of work ability for cognitive/psychological conditions (also referred to as a "C-143

PC") form. (Stip. at 41.) In the C-143 PC form, Dr. Gruenfeld provided restriction levels

related to various abilities. Dr. Gruenfeld noted the restrictions were permanent and

indicated that, based on the restrictions, Kaminski was able to work four hours per day,

two days per week. By way of explanation, Dr. Gruenfeld stated that Kaminski "has

ongoing issues with depression resulting in impairment in ADLs, Social Functioning, and

Adaptation to Stress. These issues would impact his ability to consistently and effectively

carry out future job tasks." (Stip. at 43.)

{¶ 40} 7. Kaminski filed an application for compensation for permanent total

disability (also known as an "IC2" form) dated January 12, 2023. Kaminski's application

was supported by forms completed by two healthcare professionals.

{¶ 41} 8. Michael P. Weaver, D.C., completed a request for medical information

(also referred to as a "C-30") form and a disability evaluator panel physician's report of

work ability for physical conditions ("also referred to as a "C-143") form. Dr. Weaver

indicated in the request for medical information form that Kaminski was permanently and totally disabled.

{¶ 42} 9. Robert M. Roerich, M.D., also completed a request for medical information form in addition to a disability evaluator panel physician's report of work ability for cognitive/psychological conditions (also referred to as a "C-143 PC") form. Dr. Roerich indicated in the request for medical information form that Kaminski was permanently and totally disabled.

{¶ 43} 10. At the request of the commission, Kaminski was evaluated by two independent specialists: Andrea M. Loucaides, Ph.D., with regard to the allowed psychological conditions, and Richard J. Reichert, M.D., with regard to the allowed physical conditions.

{¶ 44} 11. Dr. Loucaides examined Kaminski on April 17, 2023 and produced a commission mental and behavioral health specialist report dated May 1, 2023. In the report, Dr. Loucaides summarized Kaminski's medical records, the history of his present condition, and the results of the examination. Dr. Loucaides also responded to questions posed by the commission.

{¶ 45} Dr. Loucaides indicated that Kaminski had reached maximum medical improvement with regard to the allowed psychological conditions "as he has reached a treatment plateau with no further expectation of a significant change." (Stip. at 33.) With regard to the class and percentage of whole person impairment due to the allowed psychological conditions, Dr. Loucaides stated that Kaminski had a class II, mild impairment of 23 percent. Dr. Loucaides offered the following opinion regarding Kaminski's residual functional capacity:

> Considering only the psychological impairment due to the allowed mental and behavioral conditions, it is my opinion that Mr. Kaminski is capable of working in some capacity. Indeed, he was able to complete retraining and return to work until his physical condition deteriorated and he was unable to continue to physically perform the tasks associated with his job. He retains the capacity to focus and complete simple household tasks, maintain activities of daily living, and he manages his appointments and financial obligations.

(Stip. at 34.) Dr. Loucaides also opined that Kaminski "would do better working independently in a position with minimal social contact" and "completing simple tasks at his own pace." *Id.* In an occupational activity assessment attached to the report, Dr. Loucaides indicated Kaminski was capable of work with limitations consistent with those in the report.

{¶ 46} 12. Dr. Reichert examined Kaminski on April 18, 2023 and produced a report dated April 26, 2023. In the report, Dr. Reichert detailed Kaminski's medical history, his present complaints, and the results of the examination. Dr. Reichert noted that Kaminski's grip strength was "diminished on the left side." (Stip. at 20.) Kaminski also had "pain and weakness with resistance to abduction and flexion." *Id.* Dr. Reichert stated that Kaminski "identified himself as right-hand dominant." *Id.*

{¶ 47} Dr. Reichert's report concluded with responses to questions posed by the commission. Dr. Reichert found Kaminski had reached maximum medical improvement based on the examination, history, review of the medical records, and allowed conditions in the claim, noting that "there is no fundamental, functional or physiological improvement expected in this individual." It was further noted that Kaminski had "undergone four separate surgical procedures for his left shoulder, and documentation from his current providers identify no expectations for further surgical intervention or other treatment plans other than palliative and symptomatic care." (Stip. at 22.)

{¶ 48} Considering Kaminski's residual functional capacity, Dr. Reichert found Kaminski had "evidence for 16% whole person impairment." *Id.* at 23. With regard to specific allowed conditions, Dr. Reichert found the allowed condition of sprain lumbosacral accounted for zero percent whole person impairment; the allowed condition of sprain of neck accounted for zero percent whole person impairment; the allowed conditions of sprain left shoulder, closed acromion fracture of left shoulder, os acromial deformity of left shoulder, left bicipital tenosynovitis, substantial aggravation of preexisting left shoulder rotator cuff tendinosis, and adhesive capsulitis of left shoulder accounted for 16 percent whole person impairment.

{¶ 49} Dr. Reichert summarized Kaminski's residual functional capacity as follows:

> This individual is capable of work in the sedentary work classification only. The individual will require limited use of his left arm and to allow use of a sling to the left arm. It is noted that this individual's activities of daily living include primarily sitting, with support via either sling or physical support of the left arm. This individual performs his own self-hygiene and does very limited household chores.

*Id.* at 23. Dr. Reichert also completed a physical strength rating form, in which it was indicated that Kaminski was "capable of work" at the sedentary level, which was defined on the form as follows:

> Sedentary work means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

*Id.* at 25. "Further limitations" following the sedentary work classification were noted by Dr. Reichert on the form as follows: "Limited use (L) arm. Allow use of sling (L) arm." *Id.*

{¶ 50} 13. A commission staff hearing officer conducted a hearing on Kaminski's application for permanent total disability on April 9, 2023 and issued an order denying Kaminski's permanent total disability application on August 29, 2023. In the order, the staff hearing officer listed the allowed and disallowed conditions in the claim and summarized some of the history of Kaminski's treatment for the allowed conditions. The staff hearing officer proceeded to summarize the reports of the two specialists who examined Kaminski on behalf of the commission.

{¶ 51} With regard to Dr. Reichert's report, the staff hearing officer specifically noted the finding that Kaminski was "capable of performing self-hygiene and performing limited household chores." (Stip. at 129.) The staff hearing officer also noted Dr. Reichert's conclusion that Kaminski was "limited to 'sedentary work,' which allowed limited use of his left arm and the use of a sling for his left arm." *Id.* Turning to Dr. Loucaides's report, the staff hearing officer noted the findings that Kaminski "was 'oriented to person, place, date and situation'; spoke 'clearly, coherently and at an appropriate rate and tone'; possessed 'linear and logical' thoughts; possessed intact attention and concentration, demonstrating an ability 'to remain focused throughout his interview'; possessed appropriate 'insight into the impact of his physical function on his mood symptoms'; and, demonstrated good judgment, as exhibited 'by his response to hypothetical scenarios.' " *Id.* Dr. Loucaides's findings regarding activities of daily living were summarized as follows:

> [Kaminski] told Dr. Loucaides that he 'uses a long-handled scrubber to reach around his body when showering." [Kaminski] also reported that he can prepare simple meals independently, drive himself to appointments, feed his pets, do some laundry, and vacuum, depending on the level of his

> back pain. As an aside, although [Kaminski] has a significant past history of lower back problems, including surgical intervention, no lower back conditions have been recognized in this claim. [Kaminski] further noted that he and his family eat dinner together and that he attends his daughter's sporting events. With regard to "social functioning," [Kaminski] noted that he only has one close friend and avoids social situations, because he becomes irritated with family or the public in general. With regard to "concentration, persistence, and pace," [Kaminski] reported that [he] was capable of paying attention while driving; focusing while playing games on his phone or attending his daughter's sporting events; managing his appointments, with the aid of a calendar; and, helping his wife with managing household finances. With regard to "adaptation," [Kaminski] admitted that he can bathe himself, but requires his wife's help to dry himself off or button his clothing; was able to perform household tasks, albeit, more slowly than prior to his injury; and, noted difficulty in finding a way to engage in the recreational activities of hunting, fishing, and riding a four-wheeler, as a result of his injuries.

*Id.* The staff hearing officer summarized Dr. Loucaides's conclusion as follows: "Dr. Loucaides concluded that, given [Kaminski's] ability 'to focus and complete simple household tasks, maintain activities of daily living, and (manage) his appointments and financial obligations,' he would be capable of engaging in employment which would allow him to work 'independently in positions with minimal social contact,' and allow for completion of simple tasks 'at his own pace.' " *Id.*

{¶ 52} The staff hearing officer noted Kaminski's utilization of vocational rehabilitation services beginning in 2013 and ending with his return to work in 2014 "as a 'CNC operator.' " (Stip. at 130.) "By way of clarification," the staff hearing officer noted that "subsequent to having to leave this employment in 2017, after his fourth shoulder surgery, [Kaminski] has not attempted another course of vocational rehabilitation." *Id.*

{¶ 53} After providing the definition of sedentary work under Adm.Code 4121-3-34, the staff hearing officer found that "Dr. Reichert's and Dr. Loucaides'[s] opinions that the conditions recognized in this claim have achieved a level of Maximum Medical

Improvement and that [Kaminski] can return to work in a sedentary capacity, in a position which allows for independent work at his own pace, are persuasive and are accepted." (Stip. at 130.) Having made this finding, the staff hearing officer turned to nonmedical disability factors.

{¶ 54} To begin the analysis of the nonmedical factors, the staff hearing officer found Kaminski to be 48 years old. Noting "the generally-accepted retirement age of 65," the staff hearing officer found that Kaminski "has well in excess of a decade to participate in short-term training and search for work consistent with the restrictions noted above." (Stip. at 130.) As a result, the staff hearing officer found Kaminski's age to be a positive factor in "succeeding at a course of short-term training, to develop additional transferrable skills, and the pursuit of suitable sustained remunerative employment." *Id.*

{¶ 55} Regarding Kaminski's educational attainment, the staff hearing officer found that, according to Kaminski's testimony at the hearing, Kaminski attained his GED in 1993. The staff hearing officer again noted that through vocational rehabilitation services, Kaminski attained a "certification as a 'CNC Operator,' which included programming machines to perform manufacturing operations within the specific parameters required for the pieces being fashioned." *Id.* Based on this educational history, the staff hearing officer found Kaminski's application "supports a conclusion that he has the capacity to reason, perform basic math, and make use of his language skills." *Id.* Furthermore, the staff hearing officer found that "[w]hile [Kaminski's] Application alleges an inability to work with computers, at the hearing, he admitted that he can employ his smart phone to complete searches, in addition to being able to play games on it." *Id.* The staff hearing officer found "[t]hese skills are assets in [Kaminski's] search for employment

in a sedentary capacity." *Id.* As a result, the staff hearing officer found Kaminski's "education, subsequent vocational certification, and ability to work with the technology used by the majority of the members of the public in smart phones are also deemed to represent positive factors in completing a course of short-term training, to gain additional transferrable skills, and his search for sustained remunerative employment, compatible with his physical and psychological restrictions." *Id.*

{¶ 56} Next, the staff hearing officer summarized Kaminski's employment history based on his statements to Dr. Loucaides. The staff hearing officer found that "[a]t the age of 29, [Kaminski] began working in road construction with various employers, until the injury in this claim." (Stip. at 130.) Again, the staff hearing officer noted Kaminski's successful completion of vocational rehabilitation leading to his "employment with 'Haiss Fabricators' in 2014 as a 'CNC Operator.' " *Id.* at 131. The staff hearing officer noted Kaminski's explanation to Dr. Reichert that "the repetitive lifting required in this position resulted in an exacerbation of his left shoulder conditions, which required the fourth surgical procedure, from which he never recovered in the context of returning to work." *Id.* Stating that "[w]hile [Kaminski's] past history of employment in labor positions would not lead to many transferrable skills within the 'sedentary' classification," the staff hearing officer found that Kaminski's "last position of 'CNC Operator,' in which he was required to program the machinery to perform specific operations, reveals that he has the capacity to comprehend and perform detailed instructions." *Id.* The staff hearing officer found Kaminski "demonstrated the capacity and diligence to perform work in an office setting, at the inception of his vocational rehabilitation program." *Id.* The staff hearing officer continued: "Unfortunately, rather than focus on training for a return into a

sedentary position, the vocational specialist chose to have [Kaminski] train for a job, which required repetitive lifting and carrying, resulting in an exacerbation of his left shoulder problems and his exit from the work force." *Id.* Based on Kaminski's "diligence and intelligence in performing the computer-related tasks" as well as his "educational achievement in the CNC program," the staff hearing officer found Kaminski had "an ability to work in an office setting." *Id.* As a result, the staff hearing officer concluded that Kaminski's occupational history was also a positive factor "in gaining additional transferrable skills and the search for work consistent with his physical and psychological restrictions." *Id.*

{¶ 57} The staff hearing officer noted that "there has been no exploration of vocational rehabilitation since [Kaminski's] exit from the work force in 2017." (Stip. at 131.) "Given [Kaminski's] diligence in his previous stint in vocational rehabilitation and his young age of 48 years," the staff hearing officer found that "the likelihood of [Kaminski] gaining the transferrable skills, which would lead to securing a position consistent with his restrictions, cannot be readily dismissed." *Id.*

{¶ 58} The staff hearing officer noted an argument from Kaminski's counsel that Dr. Loucaides's report was not worthy of belief because the "impairment rating did not correspond with the 'mild' classification set forth in the Disability Evaluator's Panel." *Id.* The staff hearing officer rejected this argument because "the documentation presented by Counsel refers to the *4th* Edition of the AMA Guidelines, whereas Dr. Loucaides employed the *5th* Edition of the AMA Guidelines." *Id.*

{¶ 59} In conclusion, the staff hearing officer stated that "[u]nder the facts of this case, the determination of permanent and total disability from all employment, while

ignoring [Kaminski's] young age of 48 years and his demonstrated aptitude to retrain himself for employment beyond his past work history, would represent a grave disservice to this young man." (Stip. at 131.) Because the "preponderance of the evidence on file fails to support a conclusion that all reasonable means of returning an injured worker to remunerative employment have been exhausted," the staff hearing officer found Kaminski "failed to meet his burden of persuasion to establish that he is incapable of engaging in sustained remunerative employment as a consequence of the conditions recognized in this claim." *Id.* Noting that "all evidence on file" was reviewed and considered, the staff hearing officer stated the decision was based on the reports of Dr. Reichert and Dr. Loucaides in addition to an analysis of Kaminski's nonmedical disability factors. *Id.*

{¶ 60} 14. Following the issuance of the staff hearing officer's order denying the application for permanent total disability compensation, Kaminski requested reconsideration. The commission issued an order denying Kaminski's request for reconsideration in an order issued on September 23, 2023.

{¶ 61} 15. Kaminski commenced this mandamus action with the filing of his complaint on October 17, 2023. The commission answered the complaint on November 14, 2023.

{¶ 62} 16. Kaminski filed an amended complaint on November 16, 2023. The commission answered the amended complaint on November 22, 2023.[1]

## II. Discussion and Conclusions of Law

---

[1] Respondent A.P. O'Horo Company did not file a responsive pleading or otherwise participate in this action.

{¶ 63} Kaminski seeks a writ of mandamus ordering the commission to vacate its decision denying Kaminski's application for permanent total disability compensation.

## A. Requirements for Mandamus

{¶ 64} For this court to grant a writ of mandamus from the commission's determination, Kaminski must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A writ of mandamus will issue where "there is a legal basis to compel the commission to perform its clear legal duty under the law, including when the commission has abused its discretion in carrying out its duties." *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 2018-Ohio-2122, ¶ 25. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm. of Ohio*, 78 Ohio St.3d 579, 584 (1997). Additionally, a writ of mandamus " 'may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law.' " *State ex rel. Cassens Corp. v. Indus. Comm. of Ohio*, 2024-Ohio-526, ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

## B. Statutory Requirements for Permanent Total Disability

{¶ 65} "[T]he purpose of permanent and total disability benefits is to compensate injured persons for impairment of earning capacity." *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170 (1987), citing *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278 (1975). "Permanent total disability is the inability to do any

sustained remunerative work." *State ex rel. Schultz v. Indus. Comm.*, 2002-Ohio-3316, ¶ 61, citing *Stephenson* at 170. *See* Adm.Code 4121-3-34(B)(1).

{¶ 66} R.C. 4123.58 governs compensation for permanent total disability, allowing compensation only when one of the following conditions is met:

> (1) The claimant has lost, or lost the use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof; however, the loss or loss of use of one limb does not constitute the loss or loss of use of two body parts;
>
> (2) The impairment resulting from the employee's injury or occupational disease prevents the employee from engaging in sustained remunerative employment utilizing the employment skills that the employee has or may reasonably be expected to develop.

R.C. 4123.58(C).

{¶ 67} If the commission determines that the claimant is medically incapable of returning to the former position of employment but may be able to perform other work, the commission must also consider the nonmedical disability factors. Adm.Code 4121-3-34(D)(2)(b). The nonmedical factors include: "the injured worker's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed." *Id. See Stephenson* at 173 (setting forth nonmedical disability factors incorporated in Adm.Code 4121-3-34(D)(2)(b)). Thus, under *Stephenson*, even if the claimant is medically capable of some employment, the nonmedical disability factors may nevertheless support an award of permanent total disability compensation, provided that such award is not based on a reason prohibited by statute.

{¶ 68} Circumstances prohibiting the awarding of permanent total disability compensation are contained in R.C. 4123.58(D), which provides as follows:

> Permanent total disability shall not be compensated when the reason the employee is unable to engage in sustained remunerative employment is due to any of the following reasons, whether individually or in combination:
>
> (1) Impairments of the employee that are not the result of an allowed injury or occupational disease;
>
> (2) Solely the employee's age or aging;
>
> (3) The employee retired or otherwise is not working for reasons unrelated to the allowed injury or occupational disease.
>
> (4) The employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain.

R.C. 4123.58(D).

## C. Analysis

{¶ 69} Kaminski asserts the commission's decision denying Kaminski's application for permanent total disability compensation was an abuse of discretion for three reasons.

### 1. Whether Commission Erred in Stating It Reviewed and Considered All Evidence

{¶ 70} First, Kaminski argues the commission abused its discretion by erroneously stating that it reviewed and considered all evidence on file. Kaminski argues the commission failed to specifically mention Dr. Gruenfeld's November 15, 2022 report, which it considered credible and relied upon in terminating Kaminski's temporary total disability compensation.

{¶ 71} It is well-settled that the commission is not required to list or address evidence that it did not rely upon in reaching its decision. *See State ex rel. Whaley v. Indus. Comm.*, 2004-Ohio-6439, ¶ 3 (10th Dist.) (stating that "the commission was not

required to analyze, in its decision, evidence that it did not rely upon or was otherwise found to be insignificant"); *State ex rel. Lovell v. Indus. Comm. of Ohio*, 74 Ohio St.3d 250, 252 (1996). Here, the staff hearing officer stated that all evidence on file was reviewed and considered in issuing the order. The staff hearing officer also specifically stated that the decision was based upon the reports of Dr. Reichert and Dr. Loucaides, in addition to analysis of Kaminski's nonmedical disability factors. The staff hearing officer did not rely on Dr. Gruenfeld's opinion, and therefore was not required to list it in the order. *See State ex rel. Sours v. MGQ, Inc.*, 2023-Ohio-4289, ¶ 9 (10th Dist.). Nor has Kaminski presented any specific evidence to rebut the presumption of regularity in the commission's proceedings or the presumption that the commission considered all evidence before it. *See id.* Furthermore, to the extent that Kaminski's argument is a challenge to the commission's weighing of the evidence,[2] this court is not permitted to reweigh the evidence through an action in mandamus, as "[e]valuation of the weight and credibility of the evidence is the exclusive province of the commission." *State ex rel. Neitzelt v. Indus. Comm.*, 2020-Ohio-1453, ¶ 23. As a result, Kaminski has not shown the commission abused its discretion by stating it reviewed and considered all evidence on file.

2. *Whether Commission Abused Its Discretion in Finding Kaminski Medically Capable of Sedentary Work*

{¶ 72} Second, referring to the definition of "sedentary work" in the Administrative Code provisions pertaining to permanent total disability, Kaminski asserts the

---

[2] Kaminski stated that he "anticipates an argument forthcoming from the Industrial Commission that it [sic] is asking for a reweighing of evidence." (Kaminski's Brief at 1.)

commission abused its discretion by finding Kaminski was capable of sedentary work without providing further explanation.

{¶ 73} For purposes of determining permanent total disability, the physical demands of work are classified in defined categories in Adm.Code 4121-3-34(B)(2). Physical demands are classified as sedentary, light, medium, heavy, and very heavy work. "Sedentary work" is defined as:

> [E]xerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Adm.Code 4121-3-34(B)(2)(a). For comparison, "light work" is defined as:

> [E]xerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work:
>
> (i)when it requires walking or standing to a significant degree; or
>
> (ii)when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or
>
> (iii)when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

Adm.Code 4121-3-34(B)(2)(b).

{¶ 74} On several prior occasions, this court has confronted arguments, similar to those raised by Kaminski, in which a physician's report indicated the injured worker could perform work at a certain physical level, but also included restrictions on the injured worker that would render the worker incapable of performing at the indicated physical

level. In addressing this scenario, the court has relied in part on *State ex rel. Libecap v. Indus. Comm.*, 1996 Ohio App. LEXIS 3892 (10th Dist. Sept. 5, 1996) to find that "the commission cannot simply rely on a physician's 'bottom line' identification of an exertional category but must base its decision on the specific restrictions imposed by the physician in the body of the report." *State ex rel. Owens Corning Fiberglass v. Indus. Comm.*, 2004-Ohio-3841, ¶ 56 (10th Dist.). *See also State ex rel. Howard v. Millennium Inorganic Chems.*, 2004-Ohio-6603, ¶ 9 (10th Dist.); *State ex rel. O'Brien v. Cincinnati, Inc.*, 2008-Ohio-2841, ¶ 10 (10th Dist.); *State ex rel. Hobart v. Indus. Comm. of Ohio*, 2018-Ohio-2853 (10th Dist.).

{¶ 75} Kaminski cites to this court's decision in *Hobart* in arguing that the staff hearing officer mistakenly relied on the term "sedentary" without an explanation of how the restrictions correspond with the sedentary exertion levels. In *Hobart*, the claimant suffered an injury to her right hand, which was also her dominant hand. At the request of the commission, the claimant was examined by an orthopedist for purposes of evaluating the claimant's application for permanent total disability compensation. The orthopedist found a 43 percent upper extremity impairment, which was equivalent to a 26 percent whole person impairment, and concluded the claimant was capable of light work with the following restrictions: "[Right] hand splint must be worn. No repetitive gripping, pulling or pushing with [right] hand. No weight bearing on right hand." *Hobart*, 2018-Ohio-2853, at ¶ 26. The staff hearing officer, relying on the orthopedist's report, denied the claimant's application for permanent total disability compensation. The staff hearing officer specifically noted the restrictions contained in the orthopedist's report and

concluded that the claimant remained capable of work consistent with the restrictions enumerated by the orthopedist.

{¶ 76} The claimant sought relief in mandamus before this court, asserting that the orthopedist's report did not provide some evidence on which the commission exclusively relied in determining residual functional capacity. The court's appointed magistrate found the orthopedist's "command that there shall be 'no repetitive gripping, pulling or pushing with [right] hand' " to be "inconsistent with the first sentence of the definition of light work." *Id.* at ¶ 42. The magistrate stated that "[b]ased solely on the reports of [the orthopedist], it is difficult to see how the severe right upper extremity impairment alone permits any light work." In making this assessment, the magistrate noted as significant the orthopedist's report that the claimant used her left hand to carry and had limited range of motion. The magistrate also noted the orthopedist's report that the claimant had difficulty with grip, holding on to objects, brushing her teeth, grasping eating utensils, and the tactile feel of the right hand. Thus, the magistrate found "[e]xerting up to 20 pounds occasionally and/or up to 10 pounds frequently and/or a negligible amount of force constantly, as the definition provides, is inconsistent with [the] restriction against 'repetitive gripping, pulling or pushing.' " *Id.* at ¶ 43.

{¶ 77} The commission objected to the magistrate's decision on the basis that the magistrate erred by reweighing the evidence. The court stated that "while Ohio Adm.Code 4121-3-34(B)(2) does not require consideration of how the left upper extremity might assist the right upper extremity in the performance of the physical demands of work, in this case, such consideration would have served to explain how relator could or could not comply with the demands of light-duty work given [the orthopedist's] restrictions on the

right upper extremity." *Id.* at ¶ 7. In light of precedent preventing the commission from simply relying on a physician's "bottom line" identification of an exertional capacity, this court found the magistrate's "[e]xamination of the specific restrictions imposed by [the orthopedist] was not improper." *Id.* at ¶ 8. The court adopted the magistrate's decision and granted a writ of mandamus. The court noted that in issuing such relief, the court was "not, as the commission suggests, second-guessing the medical correctness of [the orthopedist's] opinion but, rather, requiring the commission to conduct such examination." *Id.* at ¶ 9.

{¶ 78} Following *Hobart* and several other cases from this court applying *Libecap* and *Owens Corning*, the Supreme Court of Ohio addressed the precedential import of *Libecap* in *State ex rel. Kidd v. Indus. Comm.,* 2023-Ohio-2975. In that case, the commission denied the claimant's application for permanent total disability compensation based on a physician's report that found the claimant capable of work at a sedentary level with additional restrictions of no bending, twisting, or squatting, avoiding overhead activities, and avoiding activities that require balance including using ladders. The physician also included a restriction to allow rest periods every 15 to 20 minutes for 1 to 2 minutes as needed during standing, sitting, or walking. Reviewing the claimant's challenge to the commission's order, this court held that the commission abused its discretion because the physician's report on which the commission relied contained restrictions that were seemingly inconsistent with the definition of sedentary work in Adm.Code 4121-3-34(B)(2)(a).

{¶ 79} On appeal, the Supreme Court of Ohio reaffirmed the principle that " '[a] report that is internally inconsistent cannot be some evidence supporting the

commission's decision.' " *Kidd* at ¶ 24, quoting *State ex rel. Wyrick v. Indus. Comm.*, 2014-Ohio-541, ¶ 14. With this in mind, the Supreme Court nevertheless found that the restrictions on the claimant's capabilities in the physician's report were consistent with the definition of "sedentary work" under the Administrative Code. Because the report was not internally inconsistent, the Supreme Court concluded that the commission was not precluded from relying on it as some evidence that the claimant was medically capable of sedentary work.

{¶ 80} Next, the Supreme Court found *Libecap* had "no precedential value" because the decision "did not address the 'some evidence' standard or conclude that the commission had abused its discretion." *Kidd* at ¶ 33. Noting that "[i]n later cases, the Tenth District has cited *Libecap* . . . for the proposition that the 'commission cannot simply rely on a physician's "bottom line" identification of an exertional category but must base its decision on the specific restrictions imposed by the physician in the body of the report,' " the Supreme Court found "[t]hat proposition" to be "irrelevant here" because the staff hearing officer did not ignore the restrictions imposed by the physician and outlined in the body of the report. *Id.* at ¶ 34. As a result, the Supreme Court found *Libecap* to be "distinguishable from, and inapplicable to, this case" and reversed this court's judgment. *Id.*

{¶ 81} With these cases and principles in mind, it is now appropriate to address Kaminski's arguments. Notably, Kaminski does not directly contend Dr. Reichert's report is internally inconsistent because the restrictions preclude sedentary work. Rather, Kaminski argues that "[i]t is **reasonable to assume** [the] restrictions place [Kaminski] in a less than sedentary position," and states that "the restriction **could be construed**

to bar sedentary work." (Emphasis added.) (Kaminski's Brief at 3.) Additionally, Kaminski states, "It is **reasonable to assume** a person must be able to use both arms and hands in accordance with physical restrictions to be considered able to perform sedentary work absent any language to the contrary." (Emphasis added.) (Kaminski's Brief at 3.) These statements appear to invite this court to weigh the evidence, as opposed to demonstrating inherent inconsistencies in Dr. Reichert's report.

{¶ 82} Regardless, the restrictions on Kaminski's capabilities in Dr. Reichert's report, i.e., "limited use of his left arm and to allow use of a sling to the left arm," are consistent with the definition of "sedentary work" in the Administrative Code. (Stip. at 23.) *See* Adm.Code 4121-3-34(B)(2)(a) (stating that sedentary work involves "exerting up to ten pounds of force occasionally . . . and/or a negligible amount of force frequently . . . to lift, carry, push, pull, or otherwise move objects"). Dr. Reichert also indicated Kaminski was capable of sedentary work with the aforementioned restrictions on the physical strength rating form, which included the definition of "sedentary work" from the Administrative Code directly above the restrictions. This was some evidence on which the commission could find Dr. Reichert was aware of the physical demands included in sedentary work when indicating that Kaminski was capable of such work with the applicable restrictions.

{¶ 83} Next, the magistrate finds *Hobart* to be distinguishable from the case at hand. The claimant in *Hobart* was found to be capable of physical work activity in the light work category, whereas Kaminski was placed into the sedentary work category. The claimant in *Hobart* had restrictions placed on her dominant hand, whereas Kaminski's restrictions do not apply to his dominant hand or arm. Additionally, Kaminski fails to

identify examination findings in Dr. Reichert's report that establish an inconsistency of the type found in *Hobart* based on the examination findings in the orthopedist's report. While additional detail or explanation may have been helpful in understanding Dr. Reichert's conclusion regarding Kaminski's ability to perform sedentary employment with the specified restrictions, the report is not internally inconsistent. Therefore, the commission was not precluded from relying on it as some evidence to support finding Kaminski was medically capable of sedentary work. *See Kidd* at ¶ 26.

{¶ 84} Furthermore, this case does not implicate the proposition that "the commission cannot simply rely on a physician's 'bottom line' identification of an exertional category but must base its decision on the specific restrictions imposed by the physician in the body of the report." *Owens Corning*, 2004-Ohio-3841, at ¶ 56. The staff hearing officer did not ignore the specific restrictions imposed by Dr. Reichert. To the contrary, the staff hearing officer referred to those restrictions in summarizing Dr. Reichert's report. As a result, *Libecap* and its progeny, including *Owens Corning* and *Hobart*, are inapplicable to this case. *See Kidd* at ¶ 26; *State ex rel. Freedom Ctr. v. Indus. Comm. of Ohio*, 2024-Ohio-1376, ¶ 59 (10th Dist.); *State ex rel. Stallard Bales v. Indus. Comm. of Ohio*, 2017-Ohio-947, ¶ 47 (10th Dist.).

*3. Whether Commission Erred Regarding Vocational Rehabilitation*

{¶ 85} Third, Kaminski argues the commission violated Kaminski's due process rights and abused its discretion in making findings regarding vocational rehabilitation. First, Kaminski raises a factual issue, stating that he "was never a programmer but rather an operator . . . which did not include programming machines." (Kaminski's Brief at 4.)

{¶ 86} In the order denying permanent total disability compensation, the staff hearing officer stated that Kaminski's "vocational rehabilitation was geared toward returning to work in a trade, more specifically, 'CNC {Computer Numerical Control} Operation and Programming.' " (Stip. at 130.) The staff hearing officer further found that Kaminski "was diligent in his vocational rehabilitation efforts and managed to secure a certification as a 'CNC Operator,' which included programming machines to perform manufacturing operations within the specific parameters required for the pieces being fashioned." *Id.* Furthermore, the staff hearing officer found that "[w]hile [Kaminski's] past history of employment in labor positions would not lead to many transferrable skills within the 'sedentary' classification, [Kaminski's] last position of 'CNC Operator,' in which he was required to program the machinery to perform specific operations, reveals that he has the capacity to comprehend and perform detailed instructions." *Id.* at 131.

{¶ 87} Initially, it is noted that there is some support in the record for the staff hearing officer's finding that Kaminski was employed as a CNC operator after engaging in vocational rehabilitation services. For example, in the vocational rehabilitation closure report, Tabor-Glancy states that Kaminski "was able to secure employment as a CNC operator." (Stip. at 46.) Additionally, the record contains at least some evidence in support of the staff hearing officer's findings that CNC programming was part of the training Kaminski received through vocational rehabilitation. Tabor-Glancy states that Kaminski "located training programs for CNC Operation and Programming," and ultimately attended Akron CNC School for such training. (Stip. at 45.) In the fifth amendment to Kaminski's vocational rehabilitation plan, Tabor-Glancy stated that "[t]raining will include CNC Programming and Operation." (Stip. at 106.) A "Certificate

of Completion" from Akron CNC Training Center reflects that "Kaminski has successfully completed 272 hours in CNC Programming & Operation/Machine Tools." (Stip. at 118.) Kaminski stated the following with regard to his employment duties following vocational rehabilitation: "Load heavy metal into machine. Change tooling for machine and produce parts. Unload new parts and change tooling. Inspect parts." (Stip. at 5.)

{¶ 88} Kaminski argues that the staff hearing officer "came to some conclusion that was never discussed nor clarified at the hearing" with regard to programming. (Kaminski's Brief at 5.) Though the stipulated record in this matter does not appear to directly reflect the staff hearing officer's findings with regard to programming as one of Kaminski's job duties as a CNC operator, Kaminski has not provided a transcript or other evidence reflecting the content of the proceedings before the staff hearing officer. *See State ex rel. Stevens v. Indus. Comm.*, 2012-Ohio-4408, ¶ 11 (10th Dist.), quoting *State ex rel. Ormet Corp. v. Indus. Comm.*, 1989 Ohio App. LEXIS 3773 (10th Dist. Sept. 26, 1989) (stating that the " 'relator could have requested an admission as to what transpired in this regard, filed an affidavit with respect to what transpired, or taken a deposition of someone who was present as to what transpired at the hearing' "). "A presumption of regularity accompanies commission orders." *State ex rel. Druggan v. Indus. Comm.*, 1999-Ohio-335, ¶ 10 citing *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197 (1986). To the extent that Kaminski is challenging factual findings, it is Kaminski's burden to demonstrate entitlement to relief in mandamus by clear and convincing evidence. *See Stevens*, 2012-Ohio-4408 at ¶ 11 (stating that "[a] silent record does not change the applicable burdens under the facts of this case" because "[t]he relator, not the respondent, bears the burden to prove entitlement to mandamus relief, and a relator may

not avoid that burden simply by noting the absence of a transcript"). As there is some evidence in the record to support the staff hearing officer's findings regarding vocational rehabilitation and CNC programming, and because Kaminski has not provided a transcript of the hearing before the staff hearing officer, Kaminski has not shown the staff hearing officer's findings concerning vocational rehabilitation and programming were an abuse of discretion.

{¶ 89} Next, Kaminski argues that the staff hearing officer should have engaged in further inquiry regarding Kaminski's vocational rehabilitation services and subsequent employment. Kaminski asserts that his due process rights were violated by the staff hearing officer's failure to conduct such inquiry and by assuming facts that were not discussed or documented. Though the commission is responsible for the ultimate determination regarding permanent total disability compensation, it is Kaminski's burden to show entitlement to such benefit. *See* Adm.Code 4121-3-34(D)(3)(a) ("The burden of proof shall be on the injured worker to establish a case of permanent total disability. . . . The injured worker must establish that the disability is permanent and that the inability to work is causally related to the allowed condition(s) in the claim(s)."); *State ex rel. McKee v. Union Metal Corp.*, 2017-Ohio-5541, ¶ 9 ("The burden is on the claimant to establish that the disability is permanent and that the inability to work is causally related to the allowed conditions."). If there is evidence that Kaminski wanted the staff hearing officer to consider, it was Kaminski's burden to present it. Kaminski cannot show a clear legal duty for the staff hearing officer to have engaged in further inquiry on this topic. Furthermore, though Kaminski asserts the commission violated his due process rights, Kaminski provides no explanation or authority in support of the assertion. As

previously noted, Kaminski has failed to provide this court with a transcript of the proceedings before the staff hearing officer. Kaminski cannot rely on this failure to provide a transcript to argue that the commission's factual findings are not supported by the record of the proceedings before the staff hearing officer. As a result, Kaminski has not shown a clear legal right to relief on this basis.

{¶ 90} Additionally, Kaminski contends that "[t]he mere fact that he was successful in vocational rehabilitation in the past is questionable that he would today based on his present restrictions and diagnoses," further stating that "we will never know because the Industrial Commission never explains itself." (Kaminski's Brief at 4.) Kaminski argues that prior to his 2017 surgery, Kaminski "was not limited to usage of only his right arm" and "did not have the restrictions then as he does now as pointed out by Dr. Reichert as it pertains to his left arm." *Id.* Kaminski asserts the staff hearing officer "failed to note that difference and take into consideration the added restriction" and also "failed to note the prior vocational rehabilitation was before his mental status was upgraded to the more severe diagnosis of major depressive disorder." *Id.*

{¶ 91} "The commission has broad discretion to evaluate and interpret vocational evidence." *State ex rel. Rankin v. Cyned Transport Corp.*, 2006-Ohio-2962, ¶ 4 (10th Dist.). The staff hearing officer found Kaminski's "occupational history is also a positive factor in gaining additional transferrable skills and the search for work consistent with his physical and psychological restrictions." (Stip. at 131.) The staff hearing officer noted that Kaminski's "educational achievement in the CNC program, wherein he received scores of '100%' on numerous tests support [the] conclusion" that Kaminski had an "ability to work in an office setting." *Id.* With regard to restrictions and Kaminski's

changing condition, the staff hearing officer listed the allowed conditions in the claim and found that "Dr. Reichert concluded that [Kaminski] was limited to 'sedentary work,' which allowed limited use of his left arm and the use of a sling for his left arm." (Stip. at 129.) The staff hearing officer also relied on the report of Dr. Loucaides, in which it was specifically noted that "Kaminski presented with intensifying depressive symptoms and suicidal ideation to Dr. Diorio in September 2016 and at that time, he updated Mr. Kaminski's diagnosis to Major Depressive Disorder, Single Episode, Severe without Psychotic Features." (Stip. at 29.)

{¶ 92} Thus, contrary to Kaminski's contentions, the staff hearing officer referred to the additional restrictions added by Dr. Reichert and relied on evidence that specifically mentioned the diagnosis of an additional psychological condition that was allowed after Kaminski engaged in vocational rehabilitation services. Kaminski has failed to demonstrate an abuse of discretion regarding the commission's vocational findings.

**D. Conclusion**

{¶ 93} For the foregoing reasons, it is the decision and recommendation of the magistrate that Kaminski's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.